Opinion issued December 29, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00787-CR

———————————

Joshua Javon Jackson, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 182nd District Court

Harris County, Texas



Trial Court Case No. 1210218

 



 

MEMORANDUM OPINION

          A
jury convicted appellant Joshua Javon Jackson of the felony offense of
aggravated robbery with a deadly weapon. 
See Tex. Penal Code Ann. §§ 29.02, 29.03(a)(2) (West 2011).  The jury assessed punishment at 20 years in
prison. Jackson challenges the legal sufficiency of the evidence to support his
conviction, and he argues that the trial court erred by admitting
identification evidence and by denying his motion to quash the enhancement
paragraph of the indictment.  We affirm.

Background

          On a
clear Sunday morning in January 2008, Marsha Nowotny left her apartment and got
into her sport-utility vehicle.  She left
the driver’s side door open while she placed some items on the front passenger
seat.  As she turned toward the steering
wheel and reached for the door, her hand bumped into a person and she felt the
barrel of a gun against her neck.  The
man holding the gun demanded all her money, called her vulgar names, and
threatened to kill her.  Fearing for her
life, Nowotny gave the man three dollars from her ashtray.  The man also took her wallet, which held
credit cards and personal photos but no additional cash.  With the gun still pressed against Nowotny’s
neck, the man pulled the trigger twice. 
At trial, Nowotny described a popping sound made by the gun, which was
apparently unloaded.  She testified that
the man again threatened to kill her.  Then
he reached across her and took her mobile phone from the passenger seat.  As he did this, he pointed the gun between
her eyes.  Nowotny also testified that
when the man reached across her to grab her phone, he looked straight at her
and she could see his whole face. Nowotny later provided a general description
of the robber as being a young African-American man of average build.

Sergeant R. Minchew of the Harris
County Sheriff’s Office was assigned to investigate.  After the robbery, Nowotny became aware of
two unauthorized charges on her credit card, one at a restaurant and one for
the utility bill for Raquell Green, who lived approximately a mile away from
Nowotny.  Minchew spoke with Green by
telephone and found her to be cooperative, though she feared for her
safety.  After speaking with Green,
Minchew identified appellant Joshua Jackson as a suspect in the robbery.

Using computer software that
identified African-American men approximately the same age as Jackson, Minchew
prepared a photographic line-up that included Jackson and five other men.  Minchew showed the photographic line-up to
Nowotny and instructed her that she was not obligated to identify anyone.  Without any hesitation, Nowotny identified
Jackson and wrote “100%” and her initials beside his photograph. 

Jackson was charged with aggravated
robbery.  At trial, Nowotny identified
Jackson as the person who had robbed her, saying she was “100 percent” certain
and had no doubt in her mind.  Green
testified that Jackson paid her utility bill in January 2008.  She testified that Jackson had gained some
weight and his facial skin had lightened, but otherwise he looked the same at
trial as he did in January 2008, including having a mustache and slight
beard.  Minchew testified about the
photographic line-up and Nowotny’s certainty in identifying Jackson.  On cross-examination, Jackson’s counsel
questioned Minchew on how the other five photographs were selected, pointing to
visible differences, such as the fact that some men had slight mustaches and
other men were clean shaven.  Minchew
repeatedly testified that the photographs were derived from a computer search
for black men of a certain age, that it was his practice to reject anomalous
photographs, and that he did not consider the other five photographs shown
alongside Jackson’s to be anomalous.

Finally, Jackson testified in his
own defense.  He said that on the day of
the robbery he was with the mother of his children and their young son at home
watching movies.  He testified that he
went to a friend’s apartment, played video games from approximately 10:30 a.m.
to 11:30 a.m., and, when he left, found Nowotny’s purse in the bushes.  Jackson testified that he gave the contents
of the purse, including Nowotny’s credit cards, to Green, with whom he was
intimately involved.  He denied having
pointed a gun at Nowotny, and he testified that he was innocent.

The jury found Jackson guilty of
aggravated robbery with a deadly weapon. 
Although the indictment included an enhancement paragraph for a juvenile
conviction for a crime that was a state jail felony, the jury was not
instructed to assess punishment in accordance with the habitual offender
statute.  Rather, the jury was instructed
that the punishment range for aggravated robbery was five to 99 years in prison
and a fine not to exceed $10,000.  In
addition, the jury was instructed that it could recommend community supervision
upon a finding that Jackson had never been convicted of a felony.  The jury sentenced Jackson to 20 years in
prison without imposition of a fine.  Jackson appeals, challenging the sufficiency
of the evidence, Nowotny’s identification, and the trial court’s failure to
quash the enhancement paragraph of the indictment.

Analysis

I.                 
Sufficiency of the evidence

In his first issue, Jackson
challenges the sufficiency of the evidence to support his conviction for
aggravated robbery.  We review the legal
sufficiency of evidence to support a criminal conviction to determine “whether,
after viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.” Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  As the exclusive judge of the facts, the jury
may believe or disbelieve all or any part of a witness’s testimony.  Chambers
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  The jury, which heard testimony from the
complainant, was in the best position to weigh the evidence, and on appeal the
court will defer to the jury’s assessment of credibility under these
circumstances.  See Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997).

A person is guilty of aggravated
robbery if, in the course of committing theft and with the intent to obtain or
maintain control of property, he intentionally or knowingly threatened or
placed another in fear of imminent bodily injury or death and used or exhibited
a deadly weapon.  See Tex. Penal Code Ann.
§§ 29.02, 29.03(a)(2).  Jackson argues
that the evidence tending to prove his guilt is overwhelmingly outweighed by
his testimony in which he declared his innocence.

A conviction may be based on the
testimony of a single eyewitness.  See, e.g., Santiago v. State, No. 01-09-00723-CR, 2011 WL 5617747, at *6 (Tex.
App.—Houston [1st Dist.] Nov. 17, 2011, no pet. h.).  Nowotny identified Jackson in court and in a
photographic line-up that was presented to her days after the robbery.  Both times she identified Jackson with absolute
certainty as the man who had robbed her. 
At trial, she said that Jackson held a gun to her head, threatened to
kill her, demanded her money, and took her money, her purse, and her mobile phone.  She testified that Jackson’s actions placed
her in fear for her life.  Based on
Nowotny’s testimony, which the jury was entitled to believe, a rational jury
could have found the essential elements of aggravated robbery beyond a
reasonable doubt.  See Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Chambers, 805
S.W.2d at 461.  Although Jackson
testified, denying any role in the crime, it was for the jury to determine
whether to believe Nowotny’s testimony or Jackson’s denial.  See
Chambers, 805 S.W.2d at 461.  We hold
that the evidence was legally sufficient to support the jury’s verdict, and we
overrule Jackson’s first issue.

II.              
Admissibility of in-court identification

In his second issue, Jackson
contends that the trial court erred by allowing Nowotny’s in-court
identification testimony.  Jackson
contends that the photographic line-up shown to Nowotny was impermissibly
suggestive and tainted her later in-court identification.

“[A] pre-trial identification
procedure may be so suggestive and conducive to mistaken identification that
subsequent use of that identification at trial would deny the accused due
process of law.”  Barley v. State, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995)
(citing Stovall v. Denno, 388 U.S.
293, 87 S. Ct. 1967 (1967)).  The
admissibility of an in-court identification is determined by a two-step
analysis: “1) whether the out-of-court identification procedure was
impermissibly suggestive; and 2) whether that suggestive procedure gave rise to
a very substantial likelihood of irreparable misidentification.”  Id.
at 33 (footnote & citations omitted).  “An analysis under these steps requires an
examination of the ‘totality of the circumstances’ surrounding the particular
case and a determination of the reliability of the identification.”  Id.  We review the trial court’s factual findings
deferentially, but we review de novo the trial court’s legal determination of
whether the reliability of an in-court identification has been undermined by an
impermissibly suggestive pretrial identification procedure.  See,
e.g., Loserth v. State, 963
S.W.2d 770, 773–74 (Tex. Crim. App. 1998). 


The manner in which a pretrial
identification procedure is conducted may make it improperly suggestive.  Barley,
906 S.W.2d at 33.  For example, it was
improperly suggestive for a law enforcement officer to show a witness a single
photograph of a person identified as the person in custody and under indictment
for the murder of her husband.  See Delk v. State, 855 S.W.2d 700, 706
(Tex. Crim. App. 1993).

Sgt. Minchen testified that he
created the photographic line-up based on Nowotny’s general description of a
young African-American man of average build and using computer software to search
for other men approximately the same age. 
All of the men in the photographic line-up were African-American.  Jackson contends that the photographic
line-up was impermissibly suggestive because of the differences among the
photographs placed beside his photograph. 
Some had facial hair, some did not; all wore street clothes, although
their shirts were not all the same color; and slight variations in their skin
tone were apparent in the photographs.  “Although
every photographic array must contain photographs of individuals who fit the
rough description of the suspect, it is not essential that all individuals be
identical in appearance.”  Burkett, 127 S.W.3d at 127 (citing Buxton v. State, 699 S.W.2d 212, 216
(Tex. Crim. App. 1985)).  “Neither due
process of law nor common sense requires such exactitude.”  Id.
(citing Giesberg v. State, 945 S.W.2d
120, 125–26 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d).  Accordingly, we hold that the contents of the
photographic array were not impermissibly suggestive, and we overrule Jackson’s
second issue.

III.          
Motion to quash enhancement paragraph of the indictment

Finally, in his third issue,
Jackson contends that the trial court erred by denying his motion to quash the
enhancement paragraph of the indictment. 
Jackson argues, based on the habitual offender statute, that his
juvenile state-jail felony adjudication cannot be used to enhance his
punishment for aggravated robbery.  See Tex.
Penal Code Ann. § 12.42(e) (West Supp. 2011) (providing that state jail
felony cannot be used to enhance punishment for first degree felony).  

          However,
at the punishment phase, the jury was not instructed about sentencing based on
an enhancement paragraph, and the judgment, likewise, does not reflect trial on
an enhancement paragraph.  Rather, the
jury was instructed on the unenhanced penalty range for a first degree felony, five
to 99 years in prison and up to a $10,000 fine. 
See Tex. Penal Code Ann. § 12.32 (West 2011).  Because the jury considered only the
unenhanced penalty range, even if we were to assume that the trial court erred
in denying Jackson’s motion to quash the enhancement paragraph, he could not
prove that such an error was harmful.  See Tex.
R. App. P. 44.2(b) (stating that errors that do not affect substantial
rights must be ignored); Mercier v. State,
322 S.W.3d 258, 264 (Tex. Crim. App. 2010) (applying harmless error analysis to
substantive defects in charging instrument). 
We overrule Jackson’s third and final issue.

Conclusion

We affirm the judgment of the trial court.

 

 

 

 

 

                                                                   Michael Massengale

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Massengale.

Do not
publish.   Tex. R. App. P. 47.2(b).