

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-77,047

**KENNETH WAYNE THOMAS, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON DIRECT APPEAL FROM CAUSE NO. F86-85539-M
## IN THE 194TH DISTRICT COURT
## DALLAS COUNTY

KELLER, P.J., filed a dissenting opinion in which KEASLER, YEARY and KEEL, JJ., joined.

The Court grants a new punishment hearing in this case because it concludes that a State-sponsored expert witness improperly relied upon the now-disavowed *Briseno*[1] factors in expressing an opinion that Appellant was not intellectually disabled. The Court does not say that Appellant objected to any of the expert's testimony on this basis, and the record does not appear to contain any

---

[1] *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), *overruled in part by Ex parte Moore*, 548 S.W.3d 552 (Tex. Crim. App. 2018).

such objection. Nor does this Court analyze Appellant's claim under the framework for determining when a claim is exempt from the usual requirement to object. Despite the fact that preservation is a systemic requirement, the Court fails to conduct the usual preservation analysis and, instead, claims that its treatment of intellectual disability cases in habeas proceedings has some bearing on the disposition of an improper-admission-of-evidence claim on direct appeal. Because, under a proper preservation analysis, Appellant's claim was not preserved and was not exempt from preservation requirements, his claim should be rejected.

The Court's opinion is also flawed because it does not conduct a harm analysis. Such an analysis would be unnecessary if Appellant's claim were rejected due to lack of preservation, as it should be, but since the Court addresses the merits, then it should also have addressed the issue of harm. The Court should either have conducted a harm analysis or explained how this particular claim was immune from a harm analysis. Because the Court has done neither of these things, even if I believed that Appellant's claim was preserved, I would not be able to join the Court's opinion.

### 1. Preservation

Preservation is a systemic requirement, meaning that a first-tier appellate court may not reverse a conviction without first addressing any issue of error preservation.[2] This is true even if the issue is not raised by the parties.[3] On direct appeal in a death penalty case, this Court is a first-tier appellate court.[4] We are required, then, to address any issue of error preservation, and there is one here, because Appellant did not raise his current claim at trial.

---

[2] *Darcy v. State*, 488 S.W.3d 325, 327-28 (Tex. Crim. App. 2016).

[3] *Id.* at 328.

[4] TEX. CODE CRIM. PROC. art. 37.071, § 2(h).

Appellate Rule 33.1 articulates a general rule requiring a timely complaint at trial to preserve a complaint on appeal.[5] Evidence Rule 103 also generally requires a timely objection on a specific ground in order to preserve a complaint regarding the admission of evidence.[6] "The vast majority of errors must be preserved."[7] "In fact, almost all error—even constitutional error—may be forfeited if the appellant failed to object."[8]

The exceptions to the general rule of preservation are articulated in *Marin v. State*,[9] our watershed case on error preservation, which divided rules into three categories: (1) absolute requirements or prohibitions, (2) rights that are waivable-only, and (3) rights that can be forfeited.[10] No common law "fundamental error" exception exists outside of the *Marin* framework.[11] Only errors that fall within the first two *Marin* categories are exempt from the objection requirement.[12] We have said that these first two categories of errors are "relatively small"[13] or "narrow."[14]

I am unaware of any case from this Court, after *Marin*, that has held that an error in admitting

---

[5] TEX. R. APP. P. 33.1; *Grado v. State*, 445 S.W.3d 736, 738-39 (Tex. Crim. App. 2014).

[6] TEX. R. EVID. 103(a)(1).

[7] *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013).

[8] *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).

[9] 851 S.W.2d 275 (Tex. Crim. App. 1993).

[10] *Ex parte Beck*, 541 S.W.3d 846, 853 (Tex. Crim. App. 2017).

[11] *Proenza v. State*, 541 S.W.3d 786, 793-94 (Tex. Crim. App. 2017).

[12] *Saldano v. State*, 70 S.W.3d 873, 888-89 (Tex. Crim. App. 2002).

[13] *Id.* at 889.

[14] *Grado*, 445 S.W.3d at 739.

evidence falls within one of the first two *Marin* categories. To the contrary, "[w]e have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. This is true even though the error may concern a constitutional right of the defendant."[15] We have explained that "we have generally treated errors in the admission of evidence as being subject to procedural default, *regardless of the constitutional right involved*."[16] We have held that a specific objection was required to preserve error in admitting evidence even when the impropriety associated with the evidence was egregious, such as expert testimony based on racial prejudice[17] or evidence obtained in violation of the right to counsel.[18] Indeed, the admission of evidence seems to be the classic situation of a rule that is "optional with the parties":

> Our system of justice is characteristically adversarial. One consequence is that many substantive and procedural features, especially most evidentiary rules, are really optional with the parties. Although we may speak of evidence as inadmissible, it is more precise, if not more correct, to say that the rules make such evidence objectionable. Indeed, this is just another way of calling attention to the fact that no issue concerning the admissibility of evidence ever arises unless one of the parties objects to it.[19]

The Court does not expressly discuss error preservation, it does not cite *Marin* or discuss the *Marin* categories, and it does not explain why this particular complaint about the admission of evidence should be treated differently from any other complaint about the admission of evidence.

---

[15] *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *Saldano*, 70 S.W.3d at 889.

[16] *Darcy*, 488 S.W.3d at 329 (emphasis added).

[17] *Saldano*, 70 S.W.3d at 889.

[18] *Darcy*, 488 S.W.3d at 329.

[19] *Rivas v. State*, 275 S.W.3d 880, 881 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 908 (1992)).

The Court does say that it is treating this case consistently with other *habeas* cases. But the habeas cases to which the Court refers are not analogous.

None of the habeas cases dealt with a claim that evidence was improperly admitted at trial. All of those cases dealt with a request to reconsider intellectual disability in a *de novo* review on habeas, where the issue had previously been decided in an earlier habeas proceeding[20] or at trial.[21] Such a *de novo* review is possible because the claim that a person is ineligible for the death penalty due to intellectual disability is cognizable on habeas[22] and because this Court is the "ultimate factfinder" on habeas.[23] But on direct appeal, this Court does not have the leeway afforded to an ultimate factfinder in capital habeas proceedings, and an unqualified *de novo* review is inappropriate.[24] Because we cannot conduct a *de novo* review of the issue of intellectual disability

---

[20] *See Ex parte Henderson*, No. WR-37,658-03, 2018 Tex. Crim. App. Unpub. LEXIS 665, *1, 3-4 (Tex. Crim. App. October 3, 2018) (not designated for publication); *Ex parte Segundo*, No. WR-70,963-02, 2018 Tex. Crim. App. Unpub. LEXIS 669, *1-2 (Tex. Crim. App. October 5, 2018) (not designated for publication); *Ex parte Long*, No. WR-76,324-02, 2018 Tex. Crim. App. Unpub. LEXIS 497, *1-2 (Tex. Crim. App. June 27, 2018) (not designated for publication); *Ex parte Lizcano*, No. WR-68,348-03, 2018 Tex. Crim. App. Unpub. LEXIS 410, *1-3 (Tex. Crim. App. June 6, 2018) (not designated for publication); *Ex parte Guevara*, WR-63,926-03, 2018 Tex. Crim. App. Unpub. LEXIS 413, *1, 3 (Tex. Crim. App. June 6, 2018) (not designated for publication); *Ex parte Davis*, No. WR-40,339-09, 2017 Tex. Crim. App. Unpub. LEXIS 869, *1-4 (Tex. Crim. App. December 6, 2017) (not designated for publication).

[21] *Ex parte Williams*, WR-71,296-03, 2018 Tex. Crim. App. Unpub. LEXIS 411, *1-2 (Tex. Crim. App. June 5, 2018) (not designated for publication).

[22] *See Briseno*, 135 S.W.3d at 11 (indicating that intellectual disability claims are cognizable on habeas).

[23] *See Ex parte Kussmaul*, 548 S.W.3d 606, 634 (Tex. Crim. App. 2018) (indicating this Court's role as "ultimate factfinder"); *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) (same).

[24] *See Ex parte Garcia*, 353 S.W.3d 785, 787-88 (Tex. Crim. App. 2011) (contrasting review in an Article 11.07 habeas proceeding, in which the Court is the ultimate factfinder, with appeal from

on direct appeal, we cannot remand to order further proceedings ancillary to such a *de novo* review.

Moreover, even if the Court were allowed to do a *de novo* review of the issue of intellectual disability on direct appeal, the remedy of granting a new punishment hearing does not line up with the remedy in the habeas proceedings to which the Court refers. To be even roughly analogous, the Court's remedy would have to be an *abatement* and remand for supplemental proceedings. But such a procedure would only be available if "the trial court's erroneous action or failure or refusal to act prevent[ed] the proper presentation of a case to the court of appeals."[25] And any such error on the trial court's part would have to have been preserved by objection.[26]

As it is, the issue is not whether this Court, as part of a *de novo* review, would disagree with the jury's finding of intellectual disability. The issue is whether the case can be reversed because evidence was improperly admitted. The improper admission of evidence has to be preserved. In fact, as discussed above, absent an objection, there is really no error at all, because rules of admissibility are optional with the parties, and absent any error, there can be no reversible error.

## 2. Harm

The Court also does not attempt to conduct a harm analysis. The Court is perhaps hampered by the fact that it does not isolate what evidence was improperly admitted (partly because it does not do a preservation analysis). Preservation aside, the Court makes no attempt to ascertain the effect of the allegedly improperly admitted evidence on the trial.

The Court also does not claim that the error is immune from a harm analysis by being

---

an Article 11.072 proceeding, in which this Court is not).

[25] TEX. R. APP. P. 44.4(a).

[26] *LaPointe v. State*, 225 S.W.3d 513, 522 (Tex. Crim. App. 2007).

"structural." It could not do so because only errors labeled as structural by the United States Supreme Court are considered immune from a harm analysis,[27] and this error has not been so labeled.[28] Even if a specific label were not required, the error would still not be structural because the improper admission of evidence, even in egregious situations, is a "classic 'trial error'" that is "markedly different" from constitutional violations that have been held to be structural.[29] Consequently, the Court errs in failing to conduct a harm analysis.

### 3. Disposition

Because I conclude that error was not preserved, I would reject Appellant's admission-of-evidence claim and evaluate his other points of error. Because the Court reverses the case on an admission-of-evidence claim that was not preserved, contrary to long established principles of appellate review, I must vigorously dissent.

Filed: December 5, 2018

Do not publish

---

[27] *Mercier v. State*, 322 S.W.3d 258, 263 (Tex. Crim. App. 2010).

[28] *See United States v. Davila*, 569 U.S. 597, 611 (2013) (listing structural errors); *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991) (same).

[29] *See Fulminante*, 499 U.S. at 309-10 ("The admission of an involuntary confession—a classic 'trial error'—is markedly different from the other two constitutional violations referred to in the Chapman footnote as not being subject to harmless-error analysis. . . . The admission of an involuntary confession is a 'trial error,' similar in both degree and kind to the erroneous admission of other types of evidence."); *Ex parte Fierro*, 934 S.W.3d 370, 374 (Tex. Crim. App. 1996) (citing *Fulminante*).