

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00108-CR

BEATRICE RACHELLE ADAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court
Camp County, Texas
Trial Court No. CM-18-17,629

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens
Concurring Opinion by Justice van Cleef

MEMORANDUM OPINION

Beatrice Rachelle Adams was found guilty by a Camp County jury of theft of property in an amount greater than $750.00, but less than $2,500.00, a class A misdemeanor.[1] Adams was sentenced to 180 days in jail, her sentence was suspended in favor of six months of community supervision, and she was ordered to pay restitution in the amount of $1,280.00. On appeal, Adams argues that her conviction is void because the information was constitutionally insufficient to vest the trial court with jurisdiction. She also argues that the evidence was legally insufficient to support her conviction. Because we find (1) that the information, although defective, still vested the trial court with jurisdiction and (2) that the evidence is legally sufficient to support Adams's conviction, we affirm the trial court's judgment.

## I. The Information, Although Defective, Still Vested the Trial Court with Jurisdiction

In her first point of error, Adams contends that, because the information[2] failed to set forth an actus reus—an act forbidden by law—it was constitutionally insufficient to vest the trial court with jurisdiction.

"As a question of law, we review the sufficiency of the [information] to confer jurisdiction on the trial court de novo." *Leone v. State*, 508 S.W.3d 346, 347 (Tex. App.—Fort Worth 2014, pet. ref'd).[3]

---

[1]TEX. PENAL CODE ANN. § 31.03(e)(3).

[2]"An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense." TEX. CONST. art. V, § 12(b).

[3]Before jury selection, the trial court denied Adams's motion to quash the information. Even so, Adams does not ask us to perform a Rule 44.2(b) harm analysis. *See Mercier v. State*, 322 S.W.3d 258, 263–64 (Tex. Crim. App. 2010).

The information alleged:

[O]n or about June 23, 2018, and before the making and filing of this information, in the County of Camp, and the State of Texas, **BEATRICE RACHELLE ADAMS**, Michael Kors purse containing One Thousand Two Hundred Eighty Dollars in United States Currency, credit cards, Medicaid cards and identification belonging to SHANEQUA YKEEN HARRIS, the owner thereof, without the effective consent of the owner, and with intent to deprive the owner of the property.

"The presentment of a valid [information] vests the district court with jurisdiction of the cause." *Jenkins v. State*, 592 S.W.3d 894, 898 (Tex. Crim. App. 2018); *see* TEX. CONST. art. V, § 12(b). "Even if an [information] has a substantive defect, it can still qualify as an [information] that vests a district court with jurisdiction." *Id.* (citing *Studer v. State*, 799 S.W.2d 263, 271 (Tex. Crim. App. 1990)). This includes informations that fail to allege all the elements of an offense. *Duron v. State*, 956 S.W.2d 547, 552 (Tex. Crim. App. 1997) (Mansfield, J., concurring) (indictment does not have to allege all elements of offense to pass constitutional muster). Although a defect of substance, "the failure to include one or more elements of the offense . . . is not a defect of constitutional magnitude causing the [information] not to be an [information] under Texas Constitution Article V, § 12 *provided* the [information] charges an identifiable offense under the Texas Penal Code." *Id.*

"To meet the definition of [information] under article V, section 12(b) of the Texas Constitution and to vest the court with both personal and subject matter jurisdiction, the [information] must (1) charge a person, and it must (2) charge the commission of an offense." *Jenkins*, 592 S.W.3d at 898 (citing TEX. CONST. art. V, § 12(b)).

3

In this case, Adams claims that the second requirement was not met. To resolve this issue, we look to the information "as a whole." *Id.* at 899. In other words, we must determine if the "'face of the charging instrument' [was] 'clear enough' to give [Adams] 'adequate notice' of the charge against [her]." *Id.* at 901 (citations omitted). "[I]n order for a defect to 'render the instrument a non-[information],' the defect must 'make it *impossible* for the defendant to know with what offense he had been charged.'" *Id.* (emphasis added) (quoting *Duron*, 956 S.W.2d at 550).

"The statutory elements of theft are (1) a person; (2) with the intent to deprive the owner of property; (3) unlawfully appropriates that property." *Lang v. State*, No. PD-1124-19, 2022 WL 3641007, at *5 (Tex. Crim. App. Aug. 24, 2022); *see* TEX. PENAL CODE ANN. § 31.03(a). Here, the information is missing the element of unlawful appropriation. If the information, despite this defect, charges an identifiable offense under the Texas Penal Code, the defect is not one of constitutional magnitude. *See Duron*, 956 S.W.2d at 550.

The information (1) names Adams, (2) it identifies the owner of the Michael Kors purse, (3) it lists the contents of the purse, and (4) it explicitly states that the intent was to deprive the owner of property. The State drafted the information to charge Adams with an offense under the Texas Penal Code. We find that the listed elements and descriptive language included in the information are clear enough to have provided Adams adequate notice that she was being charged with the offense of theft. *See Jenkins*, 592 S.W.3d at 901. Stated differently, the missing element of unlawful appropriation did not make it impossible for Adams to know "with

4

what offense [she] had been charged." *Id.* As a result, we conclude that the information was sufficient to vest the trial court with jurisdiction. We overrule this point of error.

## II. Legally Sufficient Evidence Supported the Jury's Verdict of Guilt

In her second point of error, Adams argues that the evidence was legally insufficient to support her conviction. We disagree.

### A. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common

5

design to do the prohibited act." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Paroline v. State*, 532 S.W.3d 491, 498 (Tex. App.—Texarkana 2017, pet. struck) (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Williamson*, 589 S.W.3d at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

### B.   The Evidence at Trial

Shanequa Harris was called to the emergency room in Pittsburg to attend to her father in June 2018. Harris was frantic because she was told that her father had sustained significant blood loss. When she arrived in the emergency room waiting area still frantic and crying, Harris left her purse in a chair and went to the desk to ask about her father. When Harris was permitted

6

to visit her father for approximately two hours, she left her purse in the waiting area. Harris's dark brown Michael Kors purse was missing from the waiting area when she returned there after visiting her father.

Harris's purse was valued at $250.00 and contained a wallet, a food stamp card, her social security card, her identification card, a WIC[4] card, credit cards, and $1,280.00 in cash. Harris contacted law enforcement when she was unable to locate her missing purse.

Bo Tucker, a deputy sheriff with the Camp County Sheriff's Department, was called to the hospital to investigate a possible theft. After speaking with hospital employees, Tucker learned that Adams—the only other patient in the emergency room besides Harris's father—was released during the time Harris was visiting her father.

Because Adams was from Daingerfield, Tucker contacted the police department there and asked Officer Lance Hall to "go and speak to" Adams about the missing purse. Hall contacted Tucker approximately three hours later to report that he had recovered the purse from Adams. When Harris retrieved her purse from the Daingerfield Police Department, it only contained an empty wallet and some keys. The cash, identification card, social security card, credit cards, and WIC card were all missing from Harris's purse.

In her statement to Tucker the following day, Adams explained that she was in a hurry to leave the hospital and told her daughter to grab Adams's purse and that her daughter grabbed the wrong purse. Adams explained that it was raining when she and her daughter left the emergency room, so her daughter covered the purse with a jacket. Only later did Adams realize that she had

---

[4]Special Supplemental Nutrition Program for Women, Infants, and Children.

an abandoned purse that did not belong to her. Adams stated that she took the purse to the Daingerfield Police Department and claimed to know nothing about any cash missing from the purse.

### C.    Analysis

Adams claims that, because she explained why she possessed Harris's purse and the record fails to demonstrate that the explanation is false or unreasonable, the evidence is insufficient to support her theft conviction. We disagree.

A person commits the offense of theft if, without the owner's effective consent, the person appropriates the owner's property with the intent to deprive the owner of her property. TEX. PENAL CODE ANN. § 31.03(a), (b)(2). Mere possession of property reported to be stolen will support an inference of guilt. *See Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983). To warrant such an inference, the State must establish that the possession was personal, recent, and unexplained. *Grant v. State*, 566 S.W.2d 954, 956 (Tex. Crim. App. [Panel Op.] 1978); *see Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006); *Mares v. State*, No. 14-15-00536-CR, 2016 WL 4035977, at *2–3 (Tex. App.—Houston [14th Dist.] July 26, 2016, pet. ref'd) (mem. op., not designated for publication) (applying inference in theft case). If the defendant explains her possession of stolen property, the record must show the account is false or unreasonable. *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). The question of whether a defendant's explanation is false or unreasonable is a question to be resolved by the fact-finder. *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.).

Here, the evidence showed that Adams removed Harris's purse from the emergency room and took it to her home in Daingerfield. Within a few hours of removing the purse from the emergency room, Hall contacted Adams and recovered the purse. Adams's proffered explanation—as reflected in her statement to Tucker—was that she was in a hurry to leave, her daughter grabbed the wrong purse, and Adams did not realize that she had possession of an "abandoned" purse until later because the purse was covered up by a jacket. Adams offered no explanation, though, for the missing cash, identification card, social security card, credit cards, and WIC card. A rational jury could have determined that Adams's explanation of how she came to possess the purse was false or unreasonable. *See id.*

Viewed in the light most favorable to the verdict, the evidence showed that (1) Adams was the only patient in the emergency room other than Harris's father, (2) she was present in the waiting room while Harris was with her father, and (3) she took possession of Harris's purse. The evidence also established that Harris did not give Adams permission to take possession of her purse. When Hall recovered the purse, Harris's money and credit cards were missing. From that evidence, a rational jury could have disbelieved Adams's explanation and found, beyond a reasonable doubt, that Adams was guilty of theft.

III. **Conclusion**

We affirm the trial court's judgment.


Scott E. Stevens
Chief Justice

9

CONCURRING OPINION

I concur with the opinion of my esteemed colleagues.

Intermediate appellate courts in Texas must dutifully apply the law as determined by higher courts, and we do so here. However, I question whether the Texas Court of Criminal Appeals intended to require an appellant in these circumstances to demonstrate that the defect in a charging instrument renders comprehension of the charged offense "impossible."

An information is "a written instrument presented to a court by an attorney for the State charging a person with the *commission of an offense*." TEX. CONST. art. V, § 12(b) (emphasis added). Appellant correctly states that the information lacks the actus reus of the crime of theft, and it fails to allege that the appellant *unlawfully appropriated* property. Unlike most of the charging instruments examined by other courts, this information lacks a heading or a citation to the Texas Penal Code. The four corners of the document do not charge the commission of an offense.

Despite the fact that the information does not identify an offense, our next step is to search our imaginations for a possible way to assemble a crime from the allegations. This strikes me as a highly subjective undertaking.

*Jenkins* examined an indictment that failed to name the accused. *Jenkins v. State*, 592 S.W.3d 894, 901 (Tex. Crim. App. 2018). The Texas Court of Criminal Appeals noted that, for a defect to "'render the instrument a non-[information],' the defect must 'make it impossible for the defendant to know with what offense he had been charged.'" *Id.* at 901 (quoting *Duron v.*

10

*State*, 956 S.W.2d 547 (Tex. Crim. App. 1997). The court held that the proper test is whether the face of the charging instrument is clear enough to give an appellant adequate notice of the charge against him. *Id.* at 902. The court looked to the caption to identify the defendant in the body of the indictment and ultimately affirmed Jenkins's conviction.

*Duron*'s impossibility standard derives from legislative history reported in a law review article that suggests that "you don't have to worry about whether you described the car sufficiently, or the weapon sufficiently, or those things, as long as it gives some kind of notice of what the charge is." *Duron v. State*, 956 S.W.2d 547, 550 (Tex. Crim. App. 1997) (quoting G. Dix, *Texas Charging Instrument Law: The 1985 Revisions and the Continuing Need for Reform*, 38 BAYLOR L. REV. 1, at 39–40, n.137 (Winter 1986)). *Duron* did not concern an information lacking statutory elements. *Id.* at 551.

Respectfully, this case neither concerns a generic identification, nor does it concern details lacking such as a car color or brand of weapon. Instead, it concerns the critical language that makes the offense of theft. Nonetheless, *Jenkins* requires us to determine whether it was impossible to discern the commission of an offense from the jumbled information lacking the critical, statutory adverb and verb. I join my colleagues in concluding that it was not impossible to do so.

Charles van Cleef
Justice

Date Submitted:     March 27, 2023
Date Decided:      March 31, 2023

Do Not Publish

11